IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PORSCHE CARTER,   §<br>§<br>Plaintiff,   §<br>§<br>v.   §<br>§<br>INMAR RX SOLUTIONS, INC.,   §<br>§<br>Defendant.   § | Civil Action No. 3:21-CV-1475-N |

### MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Inmar Rx Solutions, Inc.'s ("Inmar") motion for summary judgment [27]. The Court finds that no genuine dispute of material fact exists as to any of Plaintiff Porsche Carter's claims. Accordingly, the Court grants the motion.

### I. THE ORIGINS OF CARTER'S CLAIMS

Inmar is a national returns management company, and Carter worked as a night-shift scanner at its Fort Worth facility from December 2019 to February 2020. Def. App. Ex. A, Pl. Dep. Tr. 6, 8, 18 [28-1]. In January 2020,[1] Carter made three complaints that a male coworker, Oluwaseun Aliu, had behaved inappropriately toward her. *Id.* at 12–13, 23–24, 25–26. After each complaint, Inmar management promptly investigated Carter's complaints and reprimanded Aliu. Def. App. Ex. C, Dec. of Sharell Trusty 1–2 [28-3]. At all times, Aliu denied Carter's allegations. *Id.* None of the witnesses Inmar interviewed recounted Aliu saying or doing anything inappropriate toward Carter. *Id.*; Def. App. Ex.

---

[1] All dates hereafter refer to 2020.

ORDER – PAGE 1

D, Dec. of Cindy Keating 2 [28-4]. Nevertheless, Inmar offered Carter the opportunity to work on a different shift from Aliu, and when she declined,[2] Inmar moved Aliu to the other side of the warehouse. Dec. of Cindy Keating 2; Pl. Dep. Tr. 32.

In February, Carter reported two incidents that she alleges were orchestrated by Inmar in retaliation for her complaints of harassment. Pl. Dep. Tr. 104–105. On February 7, she reported that her cell phone was stolen from her assigned locker during her shift. Dec. of Sharell Trusty 2. The cell phone was later recovered in a different locker with Carter's assigned lock on it, and video footage shows Carter placing items in that locker on the day of the incident. *Id.* at 3. On February 11, she reported that she was exposed to phenol at her workstation, a toxic chemical which she identified by its smell. *Id*. at 3; Pl. Dep. Tr. 94. Inmar employees receive training on phenol exposure and the warning signs, but Carter had never smelled phenol before. Pl. Dep. Tr. 90. Inmar management was unable to locate any substances upon inspection of the area, and other employees used the workstation without incident. Def. App. Ex. B, Dec. of Mark Landsgraf 3 [28-2]. Carter went to the emergency room after her shift and was prescribed an inhaler as a precaution. Def. App. Ex. A 119.

Carter did not return to work after her shift on February 11 and requested to open a workers' compensation claim. Dec. of Sharell Trusty 3–4. Inmar repeatedly requested medical documentation of her work restrictions or inability to work, but Carter never

---

[2] Carter's stated reasons were childcare obligations and the night shift's higher pay. Pl. Dep. Tr. 29.

ORDER – PAGE 2

provided any. *Id.* at 4. In March, with prior notice, Inmar terminated Carter's employment and denied her workers' compensation claim for noncompliance with Inmar policies. *Id.*

Carter filed this suit alleging claims of sex discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII")[3] and the Texas Commission on Human Rights Act ("TCHRA").[4] Inmar now moves for summary judgment on all claims.

## II. THE LEGAL STANDARD FOR SUMMARY JUDGMENT IN TITLE VII CASES

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Though Carter has not responded to Inmar's motion, summary judgment cannot be granted "merely because it is unopposed." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). The moving party still must meet its initial burden of informing the Court of the basis for its belief that there is no genuine issue of fact for trial, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), or that "there is an absence of evidence necessary to prove a specific element of the case." *Thomas v. Barton Lodge II, Ltd.*, 17 F.3d 636, 644 (5th Cir. 1999) (citing *id.* at 322–23). A party bringing a no-evidence motion must go beyond "mere conclusory statement[s]" to satisfy its burden under *Celotex*. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017).

---

[3] Codified at 42 U.S.C. § 2000e, *et seq.*
[4] Codified at Tex. Lab. Code § 21.001, *et seq.*

ORDER – PAGE 3

The burden then shifts to the non-moving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Vedol v. Jacobs Ent., Inc.*, 436 F. App'x 409, 410 (5th Cir. 2011) (quoting *Celotex*, 477 U.S. at 324 (internal quotation marks omitted)). Failure by the nonmovant to file a substantive response constitutes failure to carry that burden. *Id.*

Employment discrimination and retaliation cases[5] can be proved by direct or circumstantial evidence. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). In cases such as this one, where the plaintiff has not produced direct evidence in support of her claims, courts in this Circuit apply a modified version of the *McDonnell Douglas* burden-shifting framework. *Burrell*, 482 F.3d at 411–12 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff must establish a *prima facie* case of discrimination or retaliation. *Burrell*, 482 F.3d at 411. If the plaintiff can do so, "the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff." *Burrell*, 482 F.3d at 411. "If the defendant meets its burden of production," the burden then finally shifts back to the plaintiff to "offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected

---

[5] Courts analyze TCHRA claims under the same standards as the federal antidiscrimination laws, including Title VII. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012)).

characteristic." *Id.* at 412. The "burden of persuasion remains with the employee throughout." *Saketkoo v. Adm'rs of Tulane Ed. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).

### III. THE COURT GRANTS SUMMARY JUDGMENT ON ALL CLAIMS

Carter alleges claims of sex discrimination, hostile work environment, and retaliation. Inmar has effectively brought a no-evidence motion, arguing that Carter lacks evidence to support elements of the *prima facie* case for each claim.

#### A. Carter's Sex Discrimination Claim Fails

To establish a *prima facie* case of sex discrimination, the evidence must show that: (1) Carter was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) other similarly situated employees outside her protected class were treated more favorably. *Saketkoo*, 31 F.4th at 997–98.

Inmar asserts that the record contains no evidence of Inmar treating male night-shift scanners more favorably than Carter, and "failure to identify a potential comparator . . . 'alone justifies dismissal.'" *Id.* at 386 (citing *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017)). The burden then shifts to Carter to produce evidence of a comparator employee. Because she has not done so, Carter's *prima facie* case of sex discrimination fails, entitling Inmar to summary judgment on this claim.

#### B. Carter's Hostile Work Environment Claim Fails

To establish a *prima facie* case of sex discrimination on a hostile work environment theory, the evidence must show that: (1) Carter belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected

ORDER – PAGE 5

a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Saketkoo*, 31 F.4th at 1003.

Even assuming Carter could support the other factors, Inmar asserts that there is no evidence that it failed to take remedial action in response to the alleged harassment. By contrast, the undisputed evidence shows that Inmar took numerous steps to address Carter's concerns, despite the lack of corroborating evidence. "[Taking] allegations seriously, [conducting] prompt and thorough investigations, and [immediately] implementing remedial and disciplinary measures based on the results of such investigations" constitutes sufficient remedial action. *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014) (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994)) (cleaned up). Inmar investigated each of Carter's reports within days. In response to her complaints of harassment, Inmar reprimanded Aliu three times, gave Carter the option to avoid working with Aliu by offering to change her schedule if she wished, and even when she declined, reassigned Aliu to a different work area so that Carter could avoid interacting with him. Inmar also promptly helped Carter recover her phone and supported her workers' compensation claim following the alleged phenol exposure. Because Carter has not carried her burden by responding with evidence that Inmar's remedial action was inadequate, she cannot establish a *prima facie* case of hostile work environment discrimination. Inmar is entitled to summary judgment on this claim.

### C. Carter's Retaliation Claim Fails

To establish a *prima facie* case of retaliation, the evidence must show that: (1) Carter engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a

ORDER – PAGE 6

causal connection exists between the protected activity and the adverse employment action. *Saketkoo*, 31 F.4th at 1000 (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (citation omitted)).

Reporting sexual harassment to management is a protected activity. *See Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). But there is no evidence that the alleged phone theft or phenol exposure were orchestrated by Inmar, beyond Carter's own speculation, which is insufficient to establish causation. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Further, no evidence suggests that Inmar was motivated to offer Carter a different shift or ultimately terminate her in retaliation for her reports. The record shows the opposite; Inmar management did not display any animosity toward Carter following her complaints and in fact they worked quickly to ensure her complaints were addressed. Carter has not responded to Inmar's assertions by producing evidence that support a causal inference, and accordingly Carter cannot establish a *prima facie* case of retaliation. Inmar is entitled to summary judgment on this claim.

## CONCLUSION

Inmar has carried its burden as the movant for summary judgment by asserting that Carter lacks evidence to support specific elements of each of her claims. Carter has not responded to raise a genuine issue of material fact for trial. Accordingly, the Court grants Inmar's motion for summary judgment.

Signed November 22, 2022.

_____
David C. Godbey
Chief United States District Judge

ORDER – PAGE 8